Schoenfeld *v.* Sachs, Appellant.

Argued May 23, 1933. Before FRAZER, C. J., SIMPSON, SCHAFFER, MAXEY and LINN, JJ.

*Arthur H. Hull,* of *Snyder, Miller, Hull & Hull,* for appellant.

*T. D. Caldwell,* of *Caldwell, Fox & Stoner,* with him *Samuel Levin,* for appellee.

OPINION BY MR. JUSTICE MAXEY, June 30, 1933:

This is an appeal from a judgment in the amount of $3,443.40 entered upon the verdict in favor of plaintiff, in an action of assumpsit.

About September 3, 1925, plaintiff entered into the employ of defendant as manager of the shoe department

in each of defendant's "ladies' ready to wear stores" situated respectively in the cities of Harrisburg, Lancaster and Reading.

On March 6, 1930, defendant entered into a verbal agreement to employ plaintiff in the same capacity in the same stores. Defendant agreed to pay plaintiff an annual salary of $7,500 a year, payable $6,500 in equal weekly installments of $125, and $500 on July 31, 1930, and $500 on January 31, 1931. Defendant also agreed to pay plaintiff a bonus of 25% on the net profits of the shoe departments under plaintiff's management and control, commissions to be paid at the end of the contract year. Plaintiff entered on his duties on February 1, 1930. He was discharged on September 2, 1930. Defendant admits the financial terms of the contract pleaded but avers that the employment was from week to week and not for a year, though the weekly payments were to be computed upon the total amount of $7,500 for the year. Defendant avers that plaintiff's discharge was due to the fact that he "was disobedient, disregarded instructions given in connection with the conduct of defendant's shoe departments, and was guilty of conduct inconsistent with the relation of master and servant." The breaches of conduct which defendant relied upon to justify the discharge of plaintiff are these: (1) up to and including August, 1930, plaintiff had exceeded the monthly budgeted purchases agreed upon to the extent of $12,892.98; (2) plaintiff presented to defendant a statement for expenses at New York, from July 6th to July 11, 1930, inclusive, $129.36. Plaintiff stated that it included railroad fare, hotel, meals and taxi service, but defendant learned that plaintiff had been given mileage, and it further appeared that the cost incurred by plaintiff for room was largely in excess of the amount defendant instructed plaintiff to incur; (3) plaintiff discharged one of the employees in the shoe department after having borrowed from this employee the sum of $300, and after having failed to repay the loan. De-

fendant alleged that this had the effect of disorganizing the sales force and was inconsistent with defendant's policy in the conduct of the store. Defendant further averred that during the year 1931 the shoe department operated at a loss of $16,335.45.

At the trial two questions were presented: (1) Was an annual contract entered into? (2) If so, was defendant justified in discharging the plaintiff? The assignments of error relate exclusively to the discharge of the plaintiff.

At the trial defendant stressed the fact that plaintiff had exceeded the budget purchases from February 1, 1930, to August 31, 1930. Plaintiff admitted that at the end of July, 1930, he had exceeded the budget figures by $11,000, but contended that defendant had confirmed the purchases. Appellant denied such confirmation. As appellant says in her paper book: "The vital point in the case, therefore, was whether defendant had or had not confirmed the excessive purchases, for if she had not confirmed them, plaintiff clearly had violated instructions, and the discharge was justified." Defendant, in order to prove that she had not confirmed the overpurchases, made several offers of evidence, the exclusion of which is made the subject of the second, third and fourth assignments of error. The substance of these offers is that, at a conference held on March 6, 1930, the losses of the shoe departments conducted by plaintiff for the year ending January 31, 1930, and for the year 1928-1929, were discussed; that it was shown to the plaintiff that these losses for the prior year were due to his overbuying; that defendant told plaintiff because of the disregard of instructions as to overpurchasing, his services would terminate; thereupon plaintiff requested of defendant another opportunity to make good; and that, after solicitation on his part, the defendant agreed to continue him in her employ. The reasoning of appellant in support of these offers is that because appellant had once brought to plaintiff's attention his alleged overpur-

chasing and had thereupon terminated his services, but had forgiven him and had taken him back in her employ, it was improbable that she would again condone the same offense. The weakness in appellant's argument is that the evidence proffered does not possess the probative value which appellant attempts to give it. The evidence would have just as much probative value in support of plaintiff's contention that his second disobedience of instructions had been condoned as it would in support of defendant's proposition that having once condoned this man's offense, she would not be likely to condone it a second time. Human experiences indicate that the contrary is quite likely to be the fact. The court did not err in rejecting the evidence offered. Thayer in his "Preliminary Treatise on Evidence at the Common Law," page 530, says: "Nothing is to be received which is not logically probative of some matter requiring to be proved." At page 265, he says: "The law furnishes no test of relevancy." For this it tacitly refers to logic and general experience. ERSKINE, in Hardy's Trial, 24 Howard State Trials, page 966, says: "The rules of evidence are founded......in the experience of common life."

The next alleged error stressed by the appellant is the court's refusal to affirm appellant's second point for charge, which constitutes the seventh assignment of error and reads as follows: "2. If the jury find from the evidence in the case that the plaintiff was instructed to keep the monthly purchases within certain budget figures, and that he made purchases in excess of these budget figures, so that on July 31, 1930, the purchases exceeded the budget in the amount of Ten Thousand Seven Hundred Seventy Dollars and Two Cents ($10,770.02), and that the defendant did not approve any increase over the budget figures, the defendant had a right to discharge the plaintiff and your verdict must be for the defendant."

The learned trial judge completely answered this allegation of error as follows: "It is true that the plaintiff admitted he had overpurchased approximately $11,000

by the end of July......but these figures......clearly embraced purchases in excess of the budget made prior to the agreement upon the budget figures. The budget figures were agreed upon sometime between March 6th and March 15th. The plaintiff testified that merchandise was ordered eight to ten weeks in advance and the defendant herself admitted these long time advance purchases and that the purchases for March were made about January. ...... What had preceded the time of making up the budget and entering into the contract could not be charged against the plaintiff as a violation of his contract of employment for the year beginning February 1, 1930."

Furthermore, the trial judge adequately covered the subject-matter of alleged overpurchases in his charge to the jury as follows: "That seems to be the principal reason for the discharge and of course, if he overpurchased, or if he disobeyed her instructions in any substantial manner so as to affect her business she had a right to discharge him for the violation of her instructions." The trial judge then called attention to the fact that the purchases for June and August, 1930, were substantially in excess of the budget figures and left to the jury the determination of the question whether or not the defendant knew of these overpurchases and approved them.

This case presented only issues of fact, all of which were submitted to the jury under proper instructions.

The judgment is affirmed.